**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| EVENFLO COMPANY, INC., <br><br> Plaintiff/Counter-defendant <br><br> v. <br><br> VEER GEAR LLC, <br><br> Defendant/Counter-plaintiff. | Case No. 3:20-cv-00030 <br><br> JUDGE THOMAS M. ROSE |

**STIPULATED ORDER ESTABLISHING PROTOCOL FOR
ELECTRONIC DISCOVERY**

After conferring on these matters, Plaintiff Evenflo Company, Inc. ("Evenflo") and Defendant Veer Gear LLC ("Veer Gear") hereby stipulate to the following Order governing electronic discovery relating to the issues in the above captioned case ("Stipulated Order"). Accordingly, good cause appearing, it is hereby ORDERED as follows:

**A.   DEFINITIONS**

1.   "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

2.   "Paper Discovery" means any document or thing discoverable under Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 34 that cannot be characterized as ESI.

3.   "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes both ESI and Paper Discovery.

4.   "E-mail" means an electronic means for communicating written information through non-telephone systems that will send, store, process and receive information.

5. "Format" means the internal structure of a file, which defines the way it is stored and used.

6. "Native Format" means the format of ESI in the application in which such ESI was originally created and/or is currently used.

7. "Litigation" means the above-captioned case pending in the United States District Court for the Southern District of Ohio.

8. "Party" or "Parties" means Plaintiff Evenflo Company, Inc. and Defendant Veer Gear LLC

9. "Producing Party" means a Party that produces documents.

10. "Receiving Party" means a Party to whom documents are produced.

11. "Responsive Document" means any Document that is responsive to any document requests served on the Producing Party in the Litigation that the Producing Party has agreed to produce or that the Producing Party has been ordered to produce by the Court.

12. "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

**B.**    **SCOPE**

The procedures and protocols set forth in this Stipulated Order shall govern the production of Responsive Documents between and among the Parties in this Litigation. Any practice or procedure set forth herein may be varied by written agreement of the Parties.

1. Nothing in this Stipulated Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Litigation. Nothing in this Stipulated Order creates an obligation by any party to produce ESI on back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium.

2. The Parties shall not be obligated under this Stipulated Order to produce any ESI that is no longer within their possession, custody or control (*i.e.*, lost or deleted) as a result of the good-faith operation of an electronic information system or document retention policy, unless the Party requesting such ESI establishes that there is good cause to believe that the Party from whom such ESI is being requested intentionally or recklessly failed to preserve, deleted or destroyed the ESI while under an obligation to retain it.

3. Notwithstanding anything to the contrary herein, the following document types are not discoverable in the Litigation except upon a showing of good cause:

    a. Recorded telephone messages, including voice-mail in the Avaya Voice (.lvp) or Waveform Audio File (.wav) file formats.

    b. Instant messaging and texting communications.

    c. Back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium.

    d. Temporary data stored in a computer's random access memory or RAM.

4. The Parties shall meet and confer to resolve any disputes that arise under this Stipulated Order. In the event the Parties cannot reach agreement on a disputed matter, a Party may submit the matter to the Court.

**C.**     <u>**PRODUCTION FORMAT**</u>

1. **ESI Production Format:** ESI shall be produced electronically, either in native format or as single page, uniquely and sequentially numbered TIFF image files not less than 300 dpi resolution to enable the generation of searchable text using Optical Character Recognition ("OCR"). Where text may be extracted when the TIFF image file is generated, the image file shall be accompanied by a text file containing the extracted text. The text files shall be named to

match the endorsed number assigned to the image of the first page of the document. The Producing Party shall apply an OCR process to produced image and text files to generate text searchable files. The images and text files shall also be accompanied by image cross-reference load files in the formats reasonably requested by each party providing the beginning and ending endorsed number of each document and the number of pages it comprises. The Producing Party shall also provide a data load file ("Data Load File") corresponding to the TIFF image files and the full text files that shall contain the requested metadata as defined below. Data Load Files will be provided in Relativity style (.opt and .dat) format or in the format requested by each Party.

During the process of converting ESI from the electronic format of the application in which the ESI is normally created, viewed and/or modified to TIFF, metadata values should be extracted and produced in a load file.

To the extent they are reasonably available, the metadata values that are to be extracted and produced in the load files are:

Metadata from Email:

    Email Subject
    Email Author
    Email Recipient
    Email CC
    Email BCC
    Email Received Date
    Email Sent Date

Metadata from Electronic Files:

    File Name
    File Author
    File Created Date
    File Modified Date
    File Extension

<u>Metadata for both Email and Electronic Files</u>:

>Custodian
>Original Path
>MD5 Hash

To the extent reasonably available, the "Custodian" or "Original Path" field with respect to ESI gathered from an individual's hard drive will provide metadata sufficient to identify the custodian from whose hard drive such ESI has been gathered.

By agreeing to produce specific categories of metadata that are reasonably available, no party is representing that any particular category of metadata exists or is reasonably available.

For all documents (for example, email) that contain an attachment, to the extent reasonably available, the following fields should be produced as part of the metadata load file to provide the parent/child or parent/sibling relationship. Field names should not exceed nine consecutive characters and there should not be spaces between those characters.

>Production Number Begin
>Production Number End
>Begattach_num
>Endattach_num
>Attachment Name
>Production Doc Page Count
>Confidentiality Designation

2. **Production of Paper Discovery:** Paper Discovery shall be converted to electronic form and produced as single page, uniquely and sequentially numbered TIFF image files not less than 300 dpi resolution to enable the generation of searchable text using OCR. The Producing Party shall generate searchable text using OCR. The text files shall be named to match the endorsed number assigned to the image of the first page of the document. The images shall also be accompanied by an image cross-reference load file providing the beginning and ending endorsed number of each document and the number of pages it comprises. The Producing Party shall also

provide a Data Load File corresponding to the TIFF image files. The field values to be produced in the load file for paper documents are as follows:

    Production Number Begin
    Production Number End
    Begattach_num
    End_attach num
    Custodian
    Confidentiality Designation

A Party need not produce a non-electronic duplicate of any Paper Discovery produced as a TIFF image file pursuant to this Paragraph, except that upon a reasonable request by the Receiving Party and a showing of good cause (e.g., problems with legibility or formatting), the Producing Party must produce the Paper Discovery in its original format or as photocopied at a mutually agreeable time and place.

3. **Appearance and Content:** Subject to any necessary redaction, each document's TIFF image file shall contain the same information and same physical representation as the document did in its original format, whether paper or electronic, consistent with the processing specifications set forth in Section D. Documents that present imaging or formatting problems that the Producing Party has not been able to resolve at the time of production shall be promptly identified by the Receiving Party by e-mail to the Producing Party after discovery of the problematic document(s). The Producing Party has no obligation to investigate whether documents it is producing present imaging or formatting problems prior to the production of the documents. The Producing Party must make a good faith attempt to resolve all imaging or formatting problems identified by the Receiving Party.

4. **Document Unitization:** If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes shall be maintained as it existed when collected by the Producing Party. If unitization cannot be

maintained, the original unitization shall be documented in the Data Load File or otherwise electronically tracked. For ESI, all unitization should be defined within the Data Load File, including the designation of parent/attachments both for e-mail and attachments and for compressed files (such as .zip or .rar files) and their contents.

5. **Color**: The parties will accommodate reasonable requests for production of specific electronically stored document types and file formats in color, *e.g.*, in cases where the black and white version of a document is illegible or the document includes images, graphs, or charts with color.

6. **Document Numbering for TIFF Images:** Each page of a document produced in TIFF file format shall have a legible, unique numeric identifier ("Document Number") not less than seven (7) digits (with zero-padding) electronically "burned" onto the image at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the document. The Document Number for each document shall be created so as to identify the Producing Party and the Document Number (*e.g.*, "ABC0000000"). Each Party shall use a unique identifying prefix derived from or related to its name.

7. **Production of ESI in Native Format:** As set forth in Section C.l, the Producing Party shall have the option of producing any ESI in Native Format with an accompanying link in the Data Load File. Should a Party make an initial production of ESI in TIFF image file format, a Receiving Party desiring that ESI in Native Format must demonstrate a particularized need for production of that ESI in its Native Format. In the event that a Receiving Party requests production of Native Format ESI, the Producing Party and the Receiving Party shall negotiate in good faith about the timing, cost and method of such production. The Parties agree that reasonable requests will be honored. However, nothing in this Sub-Section is to be read as

requiring any Producing Party, absent agreement or court order, to produce ESI in Native Format, except pursuant to Section C.8. No ESI produced in Native Format shall be intentionally manipulated to change the appearance or substance of the ESI prior to its production, unless a redaction of privileged information is required. If such redaction takes place, it will be logged in accordance with Section F. Likewise, the Receiving Party shall not use at or in connection with any deposition, court filing, hearing, or trial any ESI produced to it in Native Format that it intentionally manipulated to change its appearance or substance, unless the Receiving Party clearly indicates the changes it has made.

8. **Native File Exceptions:** The Producing Party shall produce any materials not readily convertible to TIFF format (*e.g.*, spreadsheets, Excel files, three-dimensional design files, video, animation, or audio files) in Native Format. The parties shall also produce, to the extent possible, financial reports in Native Excel Format. The parties shall also produce Powerpoint presentations in native format. For each natively produced document, the Producing Party will produce a placeholder TIFF page labeled "Document Produced Natively," branded with the appropriate confidentiality stamp and Document Number and containing the document file name of the natively produced document.

9. **De-duplication:** To the extent identical copies of documents (*i.e.*, documents with identical hash values) appear in the production, the Producing Party shall make reasonable efforts to produce only one such identical copy across all Custodians.

10. **Production Media:** The Producing Party shall produce document images, load files and metadata on hard drives, CDs, DVDs or other mutually agreeable media ("Production Media"). Each piece of Production Media shall be assigned a production number or other unique identifying label corresponding to the identity of the Producing Party, the date of the production

of documents on the Production Media, and the Document Number ranges of the documents in that production (*e.g.*, "ABC Production March 1, 2010, ABC0000123 - ABC0000456").  To the extent that the Production Media includes any information designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – PROSECUTION BAR – SUBJECT TO PROTECTIVE ORDER" under the Stipulated Protective Order entered by the Court, the label on such Production Media shall indicate that Production Media includes information so designated.  Production Media shall include text referencing the case name and number.  Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Document Number range that is being replaced.  All Production Media that is capable of write protection should be write-protected before production.  All Production Media must be properly packaged to ensure safe shipping and handling.  In the alternative, the Producing Party may produce productions of less than 1 gigabyte via secure file transfer (such as the OneHub service) to an approved service list of the Receiving Party's counsel.

    11.    **Original Documents:**  Nothing in this Stipulated Order shall eliminate or alter any Party's obligation to retain all ESI produced in the Litigation in Native Format, including associated metadata, and original hard copy documents for all Paper Discovery produced in the Litigation.

    12.    **Third-Party Software:**  To the extent that documents produced pursuant to this Stipulated Order cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with

respect to obtaining access to any such software and operating manuals that are the property of a third party.

        13.    **Costs**:  Each Party shall bear its own costs of producing relevant ESI in its possession, custody, or control.  This provision does not prohibit any Party from seeking cost-sharing measures in the event that (1) a particular discovery request is overly broad or unduly burdensome; (2) a Party requests more metadata than required under this Stipulated Order; (3) a Party requests that data be produced from any of the locations excluded in Section C.14; (4) a Party requests on-site inspection of electronic media; or (5) a Party engages in sanctionable discovery conduct.  This provision also does not prohibit any Party from seeking these (or any other) costs as the prevailing party or under any statute or rule that provides for the recovery of some or all of the costs incurred in the action.

        14.    **ESI of Limited Accessibility:**  If a Producing Party contends that any responsive ESI, excluding back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium, is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Requesting Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (*e.g.*, the type of system used to store the ESI) and the places in which such ESI is kept.  The parties shall negotiate in good faith concerning the production of any such ESI.  If the Parties are unable to reach agreement, either Party may submit any dispute to the Court.

D.  **PROCESSING SPECIFICATIONS**

The Producing Party shall collect and process documents using forensically sound methods that avoid spoliation of the ESI and its associated metadata. The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:

1. All tracked changes shall remain visible if such changes are visible upon collection.

2. OLE Embedded files shall not be extracted as separate documents.

3. Author comments shall remain or be made visible, to the extent reasonably feasible upon collection.

4. Hidden columns and rows shall remain accessible if they are accessible upon collection.

5. All presenter notes shall remain visible if such notes are visible upon collection.

E.  **ADDITIONAL ISSUES**

1. To the extent any document exists in more than one language within the possession, custody, or control of any Party, the document shall be produced in English, if available. If no English version of a document is available within the possession, custody, or control of any Party, the Producing Party does not have an obligation to produce an English translation of that document.

2. The terms of the Stipulated Protective Order entered by the Court governing the inadvertent production of privileged information also govern all production pursuant to this Stipulated Order.

3. Documents will be produced on a rolling basis.

    4.    Any disputed issues that cannot be resolved by the Parties may be submitted by any Party to the Court for resolution in accordance with Fed. R. Civ. P. 37.

**F.**    **PRIVILEGE LOG**

    1.    A Party withholding or redacting any Responsive Document on the grounds of attorney-client privilege, work product protection, common interest privilege, joint defense privilege, or any other privilege or immunity shall provide to the Receiving Party a privilege log consistent with Federal Rule of Civil Procedure 26(b)(5)(A) ("Privilege Log"). Documents or communications created or taking place after the filing of the Complaint in the Litigation, *i.e.*, January 27, 2020, that are subject to a claim of attorney-client privilege, work product protection, common interest privilege, joint defense privilege, or any other privilege or immunity need not be included on a Privilege Log.

    2.    For each document withheld or redacted, the Privilege Log shall contain the following information, to the extent reasonably available: (i) a sequential number associated with each Privilege Log record, (ii) the date of the document; (iii) the type of document (*e.g.*, letter, e-mail, memorandum); (iv) the identity of the author or authors of the document, or the sender in the case of e-mail; (v) the identity of all persons designated as addressees or copyees; (vi) a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to enable the Receiving Party to understand the subject matter of the document and assess the basis of the claim of privilege or immunity; (vii) the type or nature of the privilege asserted (*e.g.*, attorney-client privilege, work product doctrine, etc.); and (viii) the Document Numbers corresponding to the first and last page of any withheld or redacted document, if the document has been assigned any such document numbers.

3. Any e-mail stream (*i.e.*, a series of e-mails linked together by e-mail responses and forwarding) that is withheld or redacted on the grounds of privilege, work product, immunity, joint interest or any similar claim shall be logged as one document and shall be identified by the last e-mail in the chronological stream (*e.g.*, if a party withholds on the basis of privilege an e-mail stream consisting of an initial e-mail, a first reply e-mail and a second reply e-mail, the stream shall be identified by the second reply e-mail).  The parties shall not be required to log identical copies of an e-mail that is included in a stream that has been logged in accordance with this Paragraph, but nothing prevents a Receiving Party from requesting additional information regarding the other emails in such streams as needed, and such requests shall not be unreasonably denied.

    **G.**     **EMAIL DISCOVERY**

1. General ESI production requests under Rules 34 and 45 of the Federal Rules of Civil Procedure shall not include email.  To obtain email, Parties must propound specific email production requests.

2. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

3. Email production requests shall identify the custodian, search terms, and time frame.  The Parties shall cooperate to identify the proper custodians, proper search terms, and proper timeframe.

4. Each Requesting Party shall limit its email production requests to a total of five (5) custodians per Producing Party for all such requests.  The Parties may jointly agree to modify this limit without the Court's leave.  A Party may request email production for up to three (3) additional custodians; however, the Requesting Party shall bear all expenses associated with

email production for the additional custodians, including, without limitation, attorney document review.

5. With respect to each custodian's emails, a Requesting Party may request a search of no more than ten (10) search terms. The Parties may jointly agree to modify these limits without the Court's leave. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the Producing Party's company name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word or the disjunctive combination is intended to refer to a unique object such as a particular patent. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a Requesting Party serve email production requests with search terms beyond the limits agreed to by the Parties or granted by the Court pursuant to this Paragraph, the Requesting Party shall bear all reasonable costs caused by such additional discovery.

SIGNED AND ENTERED this 22nd day of February, 2021.

*s/Thomas M. Rose*
_____
Honorable Thomas M. Rose
United States District Court Judge

AGREED TO this 19th day of February, 2021.

/s/ John M. Mueller (with consent)
John M. Mueller
BAKER HOSTETLER LLP
312 Walnut Street
Suite 3200
Cincinnati, OH 45202-4074
(513) 929 – 3413
jmueller@bakerlaw.com

*Attorney for Plaintiff Evenflo Company, Inc.*

/s/    Glenn E. Forbis
**HARNESS, DICKEY & PIERCE, P.L.C.**
Glenn E. Forbis (*Pro Hac Vice*, Trial Counsel)
J. Bradley Luchsinger *(Pro Hac Vice)*
5445 Corporate Drive, Suite 200
Troy, MI 48098
(248) 641-1600
gforbis@hdp.com

Douglas A. Robinson, (*Pro Hac Vice)*
7700 Bonhomme Ave, Suite 400
St. Louis, MO 63105
(314) 726-7500
drobinson@hdp.com

Rex H. Elliott
C. Benjamin Cooper, Trial Counsel
**COOPER & ELLIOTT, LLC**
305 West Nationwide Boulevard
Columbus, Ohio 43215
(614) 481-6000
(614) 481-6001 (fax)
rexe@cooperelliott.com
benc@cooperelliott.com

*Attorneys for Defendant*