UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Evenflo Company, Inc.**,

    *Plaintiff/Counter-Defendant*,

v.                                                                               **Case No. 3:20-cv-030**
                                                                                       **Judge Thomas M. Rose**

**Veer Gear LLC,**

    *Defendant/Counter-Plaintiff*.

---

### MEMORANDUM OPINION

---

This matter is before the Court for the construction of various terms in a patent. The parties submitted briefs in support of their proposed constructions, (ECF 24, 25, 27, 28), and on August 5, 2021, the Court held a claim construction hearing during which counsel for the parties presented arguments in support of their proposed constructions. Relying on the parties' briefs, evidence, and oral arguments, the Court now constructs each of the disputed terms.

**I.**    **BACKGROUND**

This patent case involves four United States patents held by Veer Gear LLC: U.S. Patent No. 9,358,445 ("the '445 patent"); U.S. Patent No. 10,507,857 ("the '857 patent"); U.S. Patent No. 10,077,062 ("the '062 patent"); and U.S. Patent No. 10,597,058 ("the '058 patent"). These patents relate to consumer-use wagons that can be used to transport small children. Veer Gear

sells products covered by these patents.

Veer Gear accuses Evenflo Company, Inc. of infringing the patents through its sales of Evenflo's wagon product named the Pivot Xplore All-Terrain Stroller Wagon, and two associated seat adapters, the "Second Seat" and the "Infant Car Seat Adapter." After pre-suit correspondence, Evenflo filed this action seeking declarations of patent invalidity. Veer Gear counterclaimed for patent infringement. The parties dispute the construction of ten terms or phrases found in the asserted claims of the asserted patents, namely: (1) base; (2) base frame; (3) walls; (4) movably mounted; (5) storage position and/or position for storage; (6) positioned on; (7) pivotally mounted; (8) mount(ed, able) to; (9) connecting; and (10) removably.

## II.    STANDARD OF REVIEW

Construing the scope of a patent is a question of law to be determined by the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996). As a part of this process, it is the role of the Court to make any subsidiary factual findings necessary to construe the claims. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 332 (2015). Once the Court has determined the scope of the patent, it is then up to the finder of fact to decide whether infringement has occurred. *Markman*, 517 U.S. at 384. The Court need not accept either party's construction of a disputed term. *Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1274 (Fed. Cir. 2012).

The claim construction analysis begins with the words of the claim. *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1315 (Fed. Cir. 2006). "The words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576,

1582 (Fed Cir. 1996)). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art" at the time the patent was filed. Id. at 1313. The claim term must be read not only in the context of the claims where the disputed term appears but in the context of the entire patent and of the broader field. Id.

"[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." Id. at 1314. In particular, the context in which the term is used "can be highly instructive." Id. "Other claims of the patent in question, both asserted and unasserted," can also help interpret a term, "[b]ecause claim terms are normally used consistently throughout the patent...." Id.

The claims must always be read in the context of the specification, which "is the single best guide to the meaning of a disputed term" and is usually dispositive. Id. at 1315. In some cases, the specification may reveal that a claim term is given an idiosyncratic meaning. Id. at 1316; accord *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) ("[A]n inventor may choose to be his own lexicographer...."). Nevertheless, the specification cannot override the claim language itself. "For instance, although the specification often describes very specific embodiments of the invention," the claims should not be confined only to those embodiments because persons of ordinary skill in the art "rarely would confine their definitions of terms to the exact representations depicted...." *Phillips*, 415 F.3d at 1323. In sum, "'[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.'" Id. at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed Cir. 1998)).

In construing the claims, the reviewing court should also consider the patent's prosecution

3

history. Id. at 1317. "[L]ike the specification, the prosecution history was created by the patentee in attempting to explain and obtain the patent[,]" although the prosecution history is less useful than the specification in construing the claims. Id.

In addition to this "intrinsic evidence," a district court may also rely on extrinsic evidence, which "'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" Id. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (*en banc*). "However, while extrinsic evidence 'can shed useful light on the relevant art,' ... it is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" Id. (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries in particular can help a court to understand the underlying technology and how a person of ordinary skill in the art might use the claim terms. Id. at 1318; see also *Teva*, 574 U.S. at 326. "Such evidence ... may be considered if the court deems it helpful in determining" the meaning of the claims, but it is not as reliable as intrinsic evidence. *Phillips*, 415 F.3d at 1318. Extrinsic evidence must only be considered in the context of the intrinsic evidence. Id. at 1319.

"[A] bedrock principle of patent law [is] that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water v. Safari Water Filtration*, 381 F.3d 1111, 1115 (Fed. Cir. 2004) (internal citations omitted). Thus, "a claim construction analysis must begin and remain centered on the claim language itself, for that is the language the patentee has chosen to 'particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention.'" Id. at 1116 (quoting *Interactive Gift Express, Inc. v. CompuServe, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2011)) (brackets in original).). "Courts can

4

neither broaden nor narrow the claims to give the patentee something different than what he has set forth. No matter how great the temptations of fairness or policy making, courts do not rework claims. They only interpret them." *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1440, 1443 (Fed. Cir. 1988). In light of this, it is generally improper to import limitations from the specification into the claims. *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1231, (Fed. Cir. 2005) ("In examining the specification for proper context, however, this court will not at any time import limitations from the specification into the claims."). This is true even where the patent describes only one embodiment. *Phillips*, 415 F.3d at 1323 (Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.")

To avoid improperly importing limitations into the claims, "it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." Id. Claims are to be construed from the viewpoint of a person of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1313. By default, claim terms "are generally given their ordinary and customary meaning…." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "[T]he ordinary and customary meaning of a claim term is the meaning that term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. It follows that a district court need not construe terms that are clear to lay factfinders: The point of claim construction is to instruct the jury on what the claim means from the perspective of a person having ordinary skill in the art.

For many claim terms, attempting to "construe" the claim language adds little in the way of clarity. Where the perspective of a person having ordinary skill in the art would add nothing to the analysis, there may be no need to construe the terms. Thus, non-technical terms (e.g., "on" or "above" or "surround") … may not require construction by the court. Where "construing" a claim term would simply involve substituting a synonym for the claim term, it may be appropriate to allow the claim language to speak for itself. Peter S. Menell et al., "Patent claim Construction: A Modern Synthesis and Structured Framework," 25 BERKELEY TECH. L J. 713, 733–34 (2010). See, also, *SUMMIT 6, LLC v. Samsung Elecs. Co., Ltd*., 802 F.3d 1283, 1291 (Fed. Cir. 2015) ("district court did not err in declining to construe the term"); *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1367–68 (reversing district court's limiting construction of "attached to said pad" because it limited the plain and ordinary meaning of "attached" and there was no disavowal); *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Indeed, there are only two exceptions to the general rule that claim terms are given their ordinary and customary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner*, 669 F.3d at 1365.

In instances where the patent's specification reveals that the patentee gave a claim term a meaning that is broader or narrower than its ordinary and customary meaning, "the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. However, a court should only apply the patentee's alleged definition "as long as the special definition of that term is clearly stated in the patent specification or file history." *Vitronics*, 90 F.3d at 1582; see also *Thorner*, 669, F.3d at 1365 ("[T]o act as its own lexicographer, a patentee must 'clearly set forth a definition of the

6

disputed claim term' other than its plain and ordinary meaning.") (citation omitted).

Courts have found instances where "the specification may reveal an intentional disclaimer, or disavowal, of claim scope." *Phillips*, 415 F.3d at 1316. "To disavow claim scope, the specification must contain 'expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) (citation omitted). "Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir.2001). "The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002); see also *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004) ( "Absent a clear disavowal in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language."). *Thorner*, 669 F.3d at 1366. In addition to a disavowal in a specification, the prosecution history may show a clear disavowal of claim scope; this is sometimes referred to as "prosecution disclaimer." See *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1234–24 (Fed. Cir. 2003).

In assessing whether and how to define a claim term, the Federal Circuit "looks to those sources available to the public that show what a person of skill in the art would have understood

7

disputed claim language to mean." *Phillips*, 415 F.3d at 1314. (internal quotation and citation omitted). "Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Id. (internal quotation and citation omitted); see also *Markman v. Westview Instruments Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). The "intrinsic record"— the claims themselves, the patent's specification, and the patent's prosecution history—provides the best source for determining the proper construction of disputed claim terms. See, e.g., *Phillips*, 415 F.3d at 1316–17. In this context, the "patent's prosecution history" refers to the complete record of the proceedings before the [USPTO] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. Intrinsic evidence is given more weight than extrinsic evidence. Construction of a patent's claims should be consistent with a patent's internal logic, and "a term can be defined only in a way that comports with the instrument as a whole." *Markman*, 517 U.S. at 389.

"Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. Extrinsic evidence is less reliable than the intrinsic record. *Phillips*, 415 F.3d at 1318. Extrinsic evidence may not be used "for the purpose of varying or contradicting the terms of the claims." *Markman*, 52 F.3d at 981.

The prior art of record during examination of the asserted patents reflects the appropriate level of skill in the art. See, e.g., *Chore-Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774 (Fed. Cir. 1983); *Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001).

**III.    Construction of the Disputed Terms**


The parties dispute the construction of ten terms or phrases found in the asserted claims of the asserted patents, namely: (1) base; (2) base frame; (3) walls; (4) movably mounted; (5) storage position and/or position for storage; (6) positioned on; (7) pivotally mounted; (8) mount(ed, able) to; (9) connecting; and (10) removably. It is thus these ten terms that require construction by the Court.

**A – Base**

Evenflo's Proposed Construction – "the bottom support for mounting of one or more walls"

Veer Gear's Proposed Construction – "one or more components at or near the bottom of the wagon, including at least a component that forms the bottom of the wagon's cargo container"

At argument, the parties agreed to accept, should the Court adopt it, of "one or more components that form the bottom of the wagon's cargo container and support at least one wall." Because claim construction is a question of law, the Court is not bound by the parties' agreed-upon construction and has an independent duty to construe these terms. See *Markman*, 517 U.S. at 372.

The disputed "base" term appears in claims 1, 10 and 11 of the '445 patent and claims 8, 12, 17, and 19 of the '058 patent. The disputed "base" term is also an element of asserted claims 2-9 and 13-15 of the '445 patent and asserted claims 10, 11, 14, and 16 of the '058 patent as those claims depend from a claim containing that term. Evenflo's proposed construction for this term is simple, is consistent with both the intrinsic and extrinsic evidence. Specifically, the "base" term is described in the specifications of both asserted patents in which the term appears. For example, in both the '058 and '445 specification, the base is described as supporting the side

and end walls which extend upward from the base. DI 18 at JA 721, 5:7-13; id. at JA 859, 4:12-18. Such an upstanding supporting relationship is confirmed by the drawing Figs. of those patents, all of which clearly depict a base (12) supporting the walls. See, e.g., id. at JA 829-833. Indeed, the term "base," as used consistently in both the '445 and '058 patents, is used in a way to indicate that the base provides support for the walls.

Evenflo cites to a contemporaneous 2014 Merriam-Webster definition for "base" as comprising "the bottom of something considered as its support: FOUNDATION." Id. at JA 2128. However, even Veer Gear's citation to the 2004 MerriamWebster dictionary definition conveys the concept of support – "BOTTOM: FOUNDATION." Id. at JA 2263. Further, both of the two on-line definitions provided by Veer Gear (2011 American Heritage, 2001-2021 Online Etymology Dictionary) similarly convey that a "base" must provide support. Id. at JA 2205 ("A supporting part or layer; a foundation"); id. at JA 2244 ("bottom of anything considered its support, foundation, pedestal").

The Court concludes that the parties' proposed constructions are correct. The Court will adopt the construction, "one or more components that form the bottom of the wagon's cargo container and support at least one wall."

**B – Base Frame**

Evenflo's Proposed Construction – "the underlying structure for the bottom support for mounting of one or more walls"

Veer Gear's Proposed Construction – "a portion of the base that provides structural support to the container"

The disputed "base frame" term appears in claims 1, 2, 9, 12, and 14 of the '857 patent.

10

The disputed "base frame" term is also an element of asserted claims 4, 10, 11, 13, and 15 of the '857 patent as those claims depend from a claim containing that term. Evenflo's proposed construction for this term is consistent with both the intrinsic and extrinsic evidence, consistent with its proposed construction for "base."

With respect to the "base frame" term, while being a significant term appearing in all of the asserted claims of the '857 patent, it is not even specifically identified by number in the drawings or specification of the '857 patent. Indeed, the term was first added to the claims more than a year after the March 8, 2017 filing date of the '857 patent in an amendment made by the patentee to get around cited prior art rejecting the claims as initially filed. Id. at JA 1796 – 1799.

While drawing Figs. 18 - 27 of those patents depict the base frame supporting the walls, see, e.g., id. at JA 802-806, the extrinsic evidence cited by both parties with respect to the "base" term above applies equally to the "base" portion of the "base frame" term as used in the '857 patent. With respect to the "frame" portion of that term, a contemporaneous 2014 Merriam-Webster definition for "frame" describes it as comprising "the underlying constructional system or structure that gives shape or strength." Id. at JA 2129. Thus, for the term "Base Frame," the Court adopts the construction, "a portion of the base that provides structural support."

**C – Walls**

Evenflo's Proposed Construction – "vertical enclosing structure(s) mounted to the base or base frame forming a container for cargo"

Veer Gear's Proposed Construction – "a component of the wagon that forms a partition"

The disputed "wall(s)" term appears in claims 1, 4, 6, 8, 10, 13, and 15 of the '445 patent; claims 2, 4, and 5 of the '062 patent; claims 1, 10-12, and 14 of the '857 patent; and claims 1, 3,

11

4, 8, 9, 11, 12, 16, and 19 of the '058 patent. The disputed "wall(s)" term is also an element of asserted claims 2, 3, 5, 7, 9 and 14 of the '445 patent, asserted claims 2, 4, 9, 13, and 15 of the '857 patent, and asserted claims 2, 6, 10, 14, and 17 of the '058 patent as those claims depend from a claim containing that term. Specifically, the "walls" term appears in all four asserted patents and is described similarly in each as comprising vertical, generally upstanding/upright enclosing structures that are mounted to the base and together form a container. See, e.g., id. at JA 828, Abst. ("A collapsible wagon includes a base and one or more upstanding walls forming a container for cargo."); id. at JA 775, 1:47-49 ("Generally described, the present invention relates to a wagon that includes a base and a peripheral wall arrangement that together form a container for cargo."); id. at JA 719, 2:25-27; id. at 721, 5:7-13, 5:33-36; et al. The figures of the asserted patents similarly support Evenflo's proposed construction. See, e.g., id. at JA 679 – 686; id. at JA 735 – 752; id. at JA 802 – 806; and id. at JA 829 – 840.

Nothing in the intrinsic record requires walls to be "vertical enclosing structure(s)." Further, wall(s) are not necessarily "mounted" to anything, so adding that requirement as proposed by Evenflo would be, like with its constructions of "base" and "base frame," improperly adding a limitation to the claim. The claims themselves require mounting at other points in the claim. In those instances, adding a "mounted" limitation as suggested by Evenflo would be superfluous. Accordingly, the Court declines to construe the term "wall."

**D – Movably Mounted**

Evenflo's Proposed Construction – "securely attached, affixed or fastened to a support so as to be capable of displacement relative thereto"

Veer Gear's Proposed Construction – "movably connected"

12

At argument, the parties agreed the term does not need to be constructed. Because claim construction is a question of law, the Court is not bound by the parties' agreed-upon construction and has an independent duty to construe these terms. See *Markman*, 517 U.S. at 372.

The term "movably mounted" appears in claims 1 and 9 of the '445 patent. The "movably mounted" term is also an element of asserted claims 2-8, 10, and 13-15 of the '445 patent as those claims depend from a claim containing that term. Specifically, the "movably mounted" term is clearly described in the specification of the '445 patent. Id. at JA 862, 10:36-39 ("As shown in FIGS. 27-29, the latches 56 each include a receiver 106 formed on one of the sidewalls 14 and a plunger 108 movably mounted to a corresponding one of the endwalls 16.")

The 2004 Merriam-Webster definition for "move" includes "to change or cause to change position or posture." Id. at JA 2279. There is no reason to believe the jury will be confused by the term "movably," and nothing in the intrinsic record requires additional definitional language. Cf. *Thorner*, 669, F.3d at 1365 ("[T]o act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning."). The Court concludes that the words "movably mounted" are clear and easily understandable to a jury, such that no construction is required.

**E – Storage Position/Position for Storage**

Evenflo's Proposed Construction – "folded position for storage and transport"

Veer Gear's Proposed Construction – no need to construct

At argument, the parties agreed the term does not need to be constructed. Because claim construction is a question of law, the Court is not bound by the parties' agreed-upon construction and has an independent duty to construe these terms. See *Markman*, 517 U.S. at 372.

The disputed "storage position" or "position for storage" terms appear in claims 1 and 10 of the '445 patent; claims 1, 10, 13, and 14 of the '857 patent; and claims 8, 12, and 19 of the '058 patent. The disputed "storage position" or "position for storage" terms are also an element of asserted claims 2-9 and 13-15 of the '445 patent, asserted claims 2, 4, 9, 11, and 15 of the '857 patent, and asserted claims 10, 11, 14, 16, and 17 of the '058 patent as those claims depend from a claim containing that term. Specifically, the storage position/position for storage is described multiple times in the specifications of all three asserted patents in which the term appears, many of which refer to the position as the "folded position for storage and transport." DI 18 at JA 829; JA 858, 1:55-58. The figures of the relevant asserted patents are similarly consistent.

"Storage position" and "position for storage" are plain English phrases. Further constructing them contravenes Federal Circuit caselaw. E.g., *Thorner v. Sony Comput. Entm't Am. LLC*, 699 F.3d 1362, 1367–68 (reversing district court's limiting construction of "attached to said pad" because it limited the plain and ordinary meaning of "attached" and there was no disavowal). Adding descriptors like "folded" and "transport" to the claims would impermissibly read into the claim a feature of an embodiment disclosed in the specification. Exh. 1, 3:64-67 ("wagons that are at least partially collapsible by having at least one wall that is repositionable between a folded storage position and an unfolded use position."). Adding "folded" to the claims of the '058 patent would be superfluous, as it already reads "folded position for storage." Exh. 4, 25:10, 14; 26:4, 7, 31. Importing "transport" into the claim construction would add a limitation that does not appear in the specification.

The plain language of the claim—which uses the word "storage"—implies that the wagon

14

is being stored, not transported. *Phillips*, 415 F.3d at 1314 ("the claims themselves provide substantial guidance as to the meaning of particular claim terms"). The claim will not be re-written. E.g., *E.I. DuPont de Nemours & Co.*, 849 F.2d at 1443. The Court declines to construct the terms "storage position" and "position for storage" and accords those terms their ordinary and customary meanings.

**F – Positioned On**

      Evenflo's Proposed Construction – "attached to"

      Veer Gear's Proposed Construction – no need to construct

The term "positioned on" appears in claim 1 of the '445 patent. The term "positioned on" is also an element of asserted claims 2-10 and 13-15 of the '445 patent as those claims depend from a claim containing that term. Specifically, the "positioned on" term while not described in the specification of the '445 patent, is referenced in the claims as to the attachment of the latch actuator (58) to at least one of the "movable walls" – namely endwall (16). See, e.g. id. JA 829; see also JA 860 6:53-62.

The claims themselves provide guidance as to the meaning of this term. See *Phillips*, 415 F.3d at 1314 ("the claims themselves provide substantial guidance as to the meaning of particular claim terms"). Claim 1 requires "the actuator is positioned on the movable wall, and the second latch members are positioned on the wagon on at least one element of the wagon other than the movable wall." Exh. 1, 16:4–7. Claim 8 further specifies that the "actuator is positioned on the movable wall between the first latch members at the opposite ends of the movable wall." Exh. 1, 16:38–40. The latch actuator is further illustrated by numeral 58 on the '445 patent's Figure 1. See Exh. 1, 6:28–31. Further, nothing in the intrinsic record indicates that the patentee defined

15

"positioned on" to mean "attached to." Cf. *Thorner*, 669, F.3d at 1365 ("[T]o act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning."). Rather, the entirety of the intrinsic record shows that the patent used the term consistent with its plain and ordinary meaning. Accordingly, the Court declines to construct the term "positioned on" and accords that term its ordinary and customary meaning.

**G – Pivotally Mounted**

Evenflo's Proposed Construction – "securedly affixed or attached by a shaft or pin so as to turn or rotate"

Veer Gear's Proposed Construction – no need to construct

The disputed "pivotally mounted" term appears in claim 10 of the '445 patent; claims 12 and 14 of the '857 patent; and claims 8 and 12 of the '058 patent. The disputed "pivotally mounted" term is also an element of asserted claims 13 and 15 of the '857 patent and asserted claims 10, 11, 14, 16, 17, and 19 of the '058 patent as those claims depend from a claim containing that term.

The jury will readily understand the term's meaning in the context of the patents. First, the language of the claims themselves give substantial guidance as to the term's meaning. *Phillips*, 415 F.3d at 1314. Claim 10 of the '445 patent requires "the movable wall is pivotally mounted to the base for pivotal movement between the upright use position and the collapsed storage position." Exh. 1, 16:45–47. The relevant claims of the '058 patent require "a pair of opposing side walls that are each pivotally mounted to the base for moving between a folded position for storage and an unfolded position for use." Exh. 4, 25:8–10 and 26:2–4. The '857

16

patent's claims 12 and 14 require "a plurality of peripheral sidewalls, each pivotally mounted to the base frame." Exh. 2, 10:8–9 and 25–26. The patents' specifications do not apply any special meaning or lexicography to the term, but rather use it in the same broad and plain way as do the claims. Exh. 1, 6:9–17; Exh. 2, 5:46–55; Exh. 4, 2:54–3:11. Further, nothing in the prosecution histories of the patents shows a special definition of the term or a clear disavowal of any claim scope. *Thorner*, 669 F.3d at 1365. No construction is necessary

**H – Mount(ed, able) to**

    Evenflo's Proposed Construction – "securely affix(ed, able) or attach(ed, able) to"

    Veer Gear's Proposed Construction – "connected to"

The disputed "mount(ed, able) to" term appears in claims 1 and 10 of the '445 patent; claim 2 of the '062 patent; claims 1, 12, and 14 of the '857 patent; and claims 1, 3, 8, 9, 12, 14, 16, and 17 of the '058 patent. The disputed "mount(ed, able) to" term is also an element of asserted claims 2-9 and 13-15 of the '445 patent, asserted claims 4 and 5 of the '062 patent, asserted claims 2, 4, 9-11, 13, and 15 of the '857 patent, and asserted claims 2, 4, 6, 10, 11, and 19 of the '058 patent as those claims depend from a claim containing that term. Specifically, the "mount(ed, able) to" term is described in the specification of all four of the asserted patents and indicates more than mere "connection." See, e.g., DI 18 at JA 677, Abst. ("A seat adapter removably mounts a child seat to a wagon having two opposing walls and an interposed connecting wall and includes two latch components that mount to the wagon's opposing walls.") see also id. at JA 698-700.

    Veer Gear argues that, as used in the relevant claims, that "mounting" of one element on another requires nothing more than a "connection" between the two elements. Conversely,

17

Evenflo argues for (and cites intrinsic and extrinsic evidence that clearly shows) that mere "connection" is not sufficient and that some element of attachment or fixation is necessary for one element to be considered "mounted" to another. The Court construes "mounted (to)" to mean "securely affix(ed, able) or attach(ed, able) to"

**I – Connecting**

    Evenflo's Proposed Construction – "structure(s) joined to another structure"

    Veer Gear's Proposed Construction – no need to construct

The disputed "connecting" term appears in claims 4 and 5 of the '062 patent and claims 3 and 4 of the '058 patent. Specifically, the "connecting" term is described in the specifications of both patents in which the term appears. For example, in both the '062 and '058 specifications, the "connecting" term is used to describe the joining of two walls. Id. at JA 733, Abst. ("A seat adapter removably mounts a child seat to a wagon having two opposing walls and an interposed connecting wall . . ."); JA 775, 1:63-67 ("In other embodiments, a seat adapter for mounting a child seat to a wagon includes two latch components that removably mount to two opposing walls of the wagon's peripheral wall arrangement, which can include a pivotal or fixed connecting wall interposed between the opposing walls.").

The joined relationship is confirmed by the drawing Figs. of both of those patents. See id. at JA 769 – 773. The term "connecting," as used in both the '062 and '058 patents, is used in a way to indicate that the term "connecting" refers to the joining of two separate structures to each other. Evenflo cites to a contemporaneous 2014 Merriam-Webster definition for "connect" as comprising "to become joined." Id. at JA 2134. Veer Gear cites to a 2004 Merriam-Webster definition for "connect" as "JOIN, LINK" as well as 2011 American Heritage definition as "to

18

join or fasten together." Id. at JA 2267, JA 2211. The Court construes "Connecting" to mean "structure(s) joined to another structure."

**J – Removably**

      Evenflo's Proposed Construction – "capable of disassembly"

      Veer Gear's Proposed Construction – "may be removed by a user without tools"

      At argument, Veer Gear withdrew the need to add "without tools." Later during argument, the parties agreed the term does not need to be constructed. Because claim construction is a question of law, the Court is not bound by the parties' agreed-upon construction and has an independent duty to construe these terms. See *Markman*, 517 U.S. at 372.

      The disputed "removably" term appears in claim 2 of the '062 patent and claims 1, 2, 8-10, 12, 14, 16, and 17 of the '058 patent. The disputed "removably" term is also an element of asserted claims 4 and 5 of the '062 patent and asserted claims 3, 4, 6, 11, and 19 of the '058 patent as those claims depend from a claim containing that term.

      The term "removably" term is described in the specifications of both patents in which the term appears. See, e.g., id. at JA 719, 1:65-67, 2:1-2 ("In other embodiments, a seat adapter for mounting a child seat to a wagon includes two latch components that removably mount to two opposing walls of the wagon's peripheral wall arrangement, which can include a pivotal or fixed connecting wall interposed between the opposing walls."); JA 725, 14:4-6 ("The support base mounts onto the rear seat of the vehicle car and can be left there indefinitely, and the car seat 1162 removably mounts onto the support base in the vehicle."). Nowhere in any of the asserted patents, much less the claims therein, is there any mention as to the use (or non-use) of tools related to the "removable" term. Accordingly, the Court declines to construct the term

19

"Removeably" and accords that term its ordinary and customary meaning.

**DONE** and **ORDERED** in Dayton, Ohio on Tuesday, August 24, 2021.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE