# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**Evenflo Company, Inc.**,

    *Plaintiff/Counter-Defendant*,

v.                                                                               **Case No. 3:20-cv-030**
                                                                                      **Judge Thomas M. Rose**

**Veer Gear LLC,**

    *Defendant/Counter-Plaintiff*.

---

## MEMORANDUM OPINION

---

This matter is before the Court for the construction of various terms in a patent. The parties submitted briefs in support of their proposed constructions, (Doc. 49, 50, 51, 52), and on October 12, 2022, the Court held a claim construction hearing during which counsel for the parties presented arguments in support of their proposed constructions. Relying on the parties' briefs, evidence and oral arguments, the Court now constructs the disputed terms.

**I.**      **BACKGROUND**

This patent case involves four United States patents held by Veer Gear LLC: U.S. Patent No. 9,358,445 ("the '445 patent"); U.S. Patent No. 10,507,857 ("the '857 patent"); U.S. Patent No. 10,077,062 ("the '062 patent"); and U.S. Patent No. 10,597,058 ("the '058 patent"). These patents relate to consumer-use wagons that can be used to transport small children. Veer Gear

sells products covered by these patents.

Veer Gear accuses Evenflo Company, Inc. of infringing the patents through its sales of Evenflo's wagon product named the Pivot Xplore All-Terrain Stroller Wagon, and two associated seat adapters, the "Second Seat" and the "Infant Car Seat Adapter." After pre-suit correspondence, Evenflo filed this action seeking declarations of patent invalidity. Veer Gear counterclaimed for patent infringement.

II.     **STANDARD OF REVIEW**

Construing the scope of a patent is a question of law to be determined by the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996). As a part of this process, it is the role of the Court to make any subsidiary factual findings necessary to construe the claims. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 332 (2015). Once the Court has determined the scope of the patent, it is then up to the finder of fact to decide whether infringement has occurred. *Markman*, 517 U.S. at 384. The Court need not accept either party's construction of a disputed term. *Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1274 (Fed. Cir. 2012).

The claim construction analysis begins with the words of the claim. *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1315 (Fed. Cir. 2006). "The words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed Cir. 1996)). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art" at the time the patent was filed. Id. at 1313. The claim term must be read not only in the context of the claims where the disputed

2

term appears but in the context of the entire patent and of the broader field. Id.

"[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." Id. at 1314. In particular, the context in which the term is used "can be highly instructive." Id. "Other claims of the patent in question, both asserted and unasserted," can also help interpret a term, "[b]ecause claim terms are normally used consistently throughout the patent...." Id.

The claims must always be read in the context of the specification, which "is the single best guide to the meaning of a disputed term" and is usually dispositive. Id. at 1315. In some cases, the specification may reveal that a claim term is given an idiosyncratic meaning. Id. at 1316; accord *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) ("[A]n inventor may choose to be his own lexicographer...."). Nevertheless, the specification cannot override the claim language itself. "For instance, although the specification often describes very specific embodiments of the invention," the claims should not be confined only to those embodiments because persons of ordinary skill in the art "rarely would confine their definitions of terms to the exact representations depicted...." *Phillips*, 415 F.3d at 1323. In sum, "'[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.'" Id. at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed Cir 1998)).

In construing the claims, the reviewing court should also consider the patent's prosecution history. Id. at 1317. "[L]ike the specification, the prosecution history was created by the patentee in attempting to explain and obtain the patent[,]" although the prosecution history is less useful than the specification in construing the claims. Id.

3

In addition to this "intrinsic evidence," a district court may also rely on extrinsic evidence, which "'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" Id. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (*en banc*). "However, while extrinsic evidence 'can shed useful light on the relevant art,' ... it is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" Id. (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries in particular can help a court to understand the underlying technology and how a person of ordinary skill in the art might use the claim terms. Id. at 1318; see also *Teva*, 574 U.S. at 326. "Such evidence ... may be considered if the court deems it helpful in determining" the meaning of the claims, but it is not as reliable as intrinsic evidence. *Phillips*, 415 F.3d at 1318. Extrinsic evidence must only be considered in the context of the intrinsic evidence. Id. at 1319.

"[A] bedrock principle of patent law [is] that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water v. Safari Water Filtration*, 381 F.3d 1111, 1115 (Fed. Cir. 2004) (internal citations omitted). Thus, "a claim construction analysis must begin and remain centered on the claim language itself, for that is the language the patentee has chosen to 'particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention.'" Id. at 1116 (quoting *Interactive Gift Express, Inc. v. CompuServe, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2011)) (brackets in original).). "Courts can neither broaden nor narrow the claims to give the patentee something different than what he has set forth. No matter how great the temptations of fairness or policy making, courts do not rework claims. They only interpret them." *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 849

F.2d 1440, 1443 (Fed. Cir. 1988). In light of this, it is generally improper to import limitations from the specification into the claims. *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1231, (Fed. Cir. 2005) ("In examining the specification for proper context, however, this court will not at any time import limitations from the specification into the claims."). This is true even where the patent describes only one embodiment. *Phillips*, 415 F.3d at 1323 (Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.")

To avoid improperly importing limitations into the claims, "it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." Id. Claims are to be construed from the viewpoint of a person of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1313. By default, claim terms "are generally given their ordinary and customary meaning…." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "[T]he ordinary and customary meaning of a claim term is the meaning that term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. It follows that a district court need not construe terms that are clear to lay factfinders: The point of claim construction is to instruct the jury on what the claim means from the perspective of a person having ordinary skill in the art.

For many claim terms, attempting to "construe" the claim language adds little in the way of clarity. Where the perspective of a person having ordinary skill in the art would add nothing to the analysis, there may be no need to construe the terms. Thus, non-technical terms (e.g., "on" or

5

"above" or "surround") … may not require construction by the court. Where "construing" a claim term would simply involve substituting a synonym for the claim term, it may be appropriate to allow the claim language to speak for itself. Peter S. Menell et al., "Patent claim Construction: A Modern Synthesis and Structured Framework," 25 BERKELEY TECH. L J. 713, 733–34 (2010). See, also, *SUMMIT 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) ("district court did not err in declining to construe the term"); *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1367–68 (reversing district court's limiting construction of "attached to said pad" because it limited the plain and ordinary meaning of "attached" and there was no disavowal); *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Indeed, there are only two exceptions to the general rule that claim terms are given their ordinary and customary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner*, 669 F.3d at 1365.

In instances where the patent's specification reveals that the patentee gave a claim term a meaning that is broader or narrower than its ordinary and customary meaning, "the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. However, a court should only apply the patentee's alleged definition "as long as the special definition of that term is clearly stated in the patent specification or file history." *Vitronics*, 90 F.3d at 1582; see also *Thorner*, 669, F.3d at 1365 ("[T]o act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning.") (citation omitted).

Courts have found instances where "the specification may reveal an intentional disclaimer, or disavowal, of claim scope." *Phillips*, 415 F.3d at 1316. "To disavow claim scope,

6

the specification must contain 'expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) (citation omitted). "Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir.2001). "The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002); see also *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004) ( "Absent a clear disavowal in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language."). *Thorner*, 669 F.3d at 1366. In addition to a disavowal in a specification, the prosecution history may show a clear disavowal of claim scope; this is sometimes referred to as "prosecution disclaimer." See *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1234–24 (Fed. Cir. 2003).

  In assessing whether and how to define a claim term, the Federal Circuit "looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Phillips*, 415 F.3d at 1314. (internal quotation and citation omitted). "Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific

7

principles, the meaning of technical terms, and the state of the art." Id. (internal quotation and citation omitted); see also *Markman v. Westview Instruments Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). The "intrinsic record"— the claims themselves, the patent's specification, and the patent's prosecution history—provides the best source for determining the proper construction of disputed claim terms. See, e.g., *Phillips*, 415 F.3d at 1316–17. In this context, the "patent's prosecution history" refers to the complete record of the proceedings before the [USPTO] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. Intrinsic evidence is given more weight than extrinsic evidence. Construction of a patent's claims should be consistent with a patent's internal logic, and "a term can be defined only in a way that comports with the instrument as a whole." *Markman*, 517 U.S. at 389.

"Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. Extrinsic evidence is less reliable than the intrinsic record. *Phillips*, 415 F.3d at 1318. Extrinsic evidence may not be used "for the purpose of varying or contradicting the terms of the claims." *Markman*, 52 F.3d at 981.

The prior art of record during examination of the asserted patents reflects the appropriate level of skill in the art. See, e.g., *Chore-Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774 (Fed. Cir. 1983); *Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001).

### III. Construction of the Disputed Terms

The parties dispute the construction of nine terms or phrases found in the asserted claims of the asserted patents, namely: (1) bottom surface; (2) peripheral frame; (3) first position / second position; / first use position / second use position / storage position; (4) pushing / pulling;

(5) position / positionable / repositionable; (6) wagon [assembly]; (7) coupled to; (8) proximate and more proximate; and (9) may travel. These nine terms thus require construction by the Court.

**A.      Bottom surface**

Evenflo asks this Court to construe the term "bottom surface" as "wagon base component(s) that form a portion of the bottom of the wagon's cargo container." Veer Gear would have the Court adopt the ordinary and customary meaning of this phrase.

The '460 patent claims priority to U.S. Patent No. 10,507,857, which itself claims priority to two provisional applications filed in 2016. (Doc. 45-1, Appx. A at 1.) None of these priority materials discuss or describe the "bottom surface" reflected in the claims of the recently-allowed '460 patent. The "bottom surface" descriptions in the '460 patent were added by way of six separate amendments submitted on April 20, 2020. (Doc. 45-2, Appx. B at 4/20/20, Amendment, pp. 2- 5.) In that same amendment, the inventors amended the claims to recite various "bottom surface" limitations to the pending claims. (Id. at pp. 7, 9.)

The specification, as amended, identifies the "bottom surface" (20) by pointing to what in the original application was called a "base" (12) in the original specification. The drawings use different numerical identifiers and arrows for the "bottom surface" (20) and "base" (12). The amendment did not simply replace "12" with "20" in the drawings. Different numerical identifiers in patent drawings indicate different structures. *General Protecht Group, Inc. v. ITC*, 619 F.3d 1303, 1310 (Fed. Cir. 2010) (relying on patent figure's separate identification of structures).

The Court concludes that the meaning of the term would be readily apparent to both a person of ordinary skill in the art and to a lay juror. The Court adopts the plain and ordinary

9

meaning of bottom surface.

### B. Peripheral Frame

Evenflo asks this Court to construe the term "peripheral frame" as "the underlying structure for the bottom support for mounting of one or more walls." Veer Gear would have the Court construe this phrase as "a portion of the base that provides structural support to the container."

The claim term "peripheral frame" appears in dependent claim 14 of the '460 Patent. That claim requires that the "base [from independent claim 12] includes a peripheral frame." (Doc. 50-2, 10:33–34). Independent claim 21 requires "at least one pivot mechanism that pivotally couples the handle to a peripheral frame of the wagon assembly, wherein the at least one pivot point mechanism defines a first pivot point of the pair of pivot points." (Doc. 50-21:3–6). Dependent claims 23, 24, 26 and 27 further require various connections of structure to the peripheral frame. (Doc. 50-2, 11:9–16, 21–26).

The Court will not import the "base" into a construction of "peripheral frame." See *SRI Intern. v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) (*en banc*) ("It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement"). Nothing in the specification requires the "peripheral frame" to include a base, and there is no lexicography or clear disavowal of claim scope that would require defining "peripheral frame" to include a "base" element. *Thorner*, 669 F.3d at 1365. The Court will construe the term "peripheral frame" as "the underlying structure for the bottom support for mounting of one or more walls."

10

### C. First / Second Position; / First Use / Second Use Position; Storage Position

Claims 12 and 16 refer to "first position and "second position," while claims 18, 21, 34, 35, and 36 refer to a "first use position" and a "second use position," and claims 31 and 39 refer to a "storage position." PageId 4250-51. Evenflo would have the Court construe "first [use] position"/ "second [use] position" as "distinct positions for use not storage." Evenflo would have the Court construe "storage position" as "a position distinct from the first [use] position and second [use] position." Veer Gear would have the Court give the terms their ordinary and customary meanings.

Claims 1 and 10 require "the bottom surface comprises a footwell feature positionable in an extended position and a storage position." (Doc. 50-2, 9:23–25, 10:1–3). Claim 10 requires "releasing a handle of the wagon from a locking mechanism retaining the handle in a first position for pushing the wagon; [and] pivoting the handle from the first position to a second position for pulling the wagon." (Doc. 50-2, 10:4–8). Claim 12 requires "a handle that is repositionable between a first use position, a second use position, and a storage position," (Doc. 50-2, 10:24–25) Independent claims 21 and 35 require that the handle is "repositionable between a first use position and a second use position by pivoting the handle about the first and second pivot points." (Doc. 50-2, 10:59–62, 12:24–26). Claim 31, which depends from claim 21, adds "the handle further comprises a storage position." (Doc. 50-2, 11:38–39.)

The ordinary and customary meaning of these terms would imply that each is a separate and distinct position, as Evenflo advocates. Veer Gear, however, argues that the ordinary and customary meaning of these terms might describe that same position. (Doc. 50 at PageID 5812.

11

"Nothing in the intrinsic record contains any lexicography or disavowal requiring the handle to pivot between the "storage position" and a use position, as opposed to the handle extending and collapsing (i.e., telescope in and out) like in the accused product, or that the handle must be locked in a distinct angular position in both use positions as opposed to being free to pivot in one of the use positions (for pulling the wagon) like in the accused product.")

Two use positions and a storage position, in their ordinary and customary meanings are mutually exclusive. Terms with different names almost always have different meanings. *Helmsderfer v. Bobrick Wash-room Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) ("[D]ifferent claim terms are presumed to have different meanings."). The claims are explicit that two handle positions—the "first" and "second"—are "use" positions for pulling or pushing the wagon. By contrast, the "storage" position is a position intended for storage, and storage only. If the "storage" position is the same as either "use" position, the "use" and "storage" descriptors are superfluous, at best—that is, any "use" position could be a "storage" position, and vice versa. *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 791-94 (Fed. Cir. 2021) (proposed construction that rendered claim language superfluous was incorrect). Furthermore, if the use positions and storage position were the one and the same, other aspects of the claims would not make sense, as it is not clear how a claimed handle can be "reposition[ed]" or "mov[ed]" from one position to the same position.

A patentee's use of the terms "first," "second," and "storage" requires that the three handle positions be distinct. See *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1373 (Fed. Cir. 2005) ("The terms 'first, second, and third' are terms to distinguish different elements of the claim. . . . Thus, the 'first,' 'second,' and 'third' [uses] . . . designate different [uses]

12

within the 'unit' according to their location and elevation"). The specification in every embodiment depicts and describes use and storage positions as distinct from each other. (See, e.g., Doc. 45-1, Appx. A at 6:12-15 ("the pivot-lock mechanism locks the handle in a 'stowed' position folded backward/down onto the base in a compact arrangement for storage and/or transport"), 6:36-35 ("The rearmost notches 78 define the stowed position, the forward most notches define the down position, and the intermediate notches define the upright position."), 7:9-12 ("the stowed position locks the handle in a folded position (folded over the wagon side walls) locking the wagon side walls in a folded condition"), 7:30-34 ("in the stowed position the handle is folded down over the folded wagon peripheral walls and can be locked in place thereby acting as a storage latch to prevent unintentional unfolding of the wagon peripheral walls"), 8:8-13 ("the pivotal travel of the handle is not limited by the front end wall of the wagon in its upright use position, and instead the handle can be . . . position[ed] at either end of the wagon [for] pulling the wagon from either end."), 1:50-53, 5:57-6:1-11, FIGS. 27-49.)

For these reasons, the Court will construe "first [use] position"/ "second [use] position" as "distinct positions for use not storage." Likewise, the Court will construe "storage position" as "a position distinct from the first [use] position and second [use] position."

### D. Pushing / Pulling

Evenflo asks this Court to construe the words "pushing" and "pulling" as "pushing only" and "pulling only." Veer Gear would have the Court give these words their ordinary and customary meaning.

Once again, the ordinary and customary meaning of "pushing" would be "pushing only," and the ordinary and customary meaning of "pulling" would be "pulling only." But Veer Gear

13

argues that pulling might include pushing, and *vice versa*. Doc. 51, PageId 5930 ("Evenflo makes no effort to show that the inventors gave special definitions to "pulling" or "pushing" that would exclude secondary uses of the wagon…"). Any graduate of the Midvale School for the Gifted knows better. (See Gary Larson, "Midvale School for the Gifted," The Far Side, January 1, 1986 (1-634); also available at Gary Larson, *The Far Side Observer: collection no. 8,* 1989; and https://store.gocomics.com/product/the-far-side-comic-art-print-midvale-school-for-the-gifted-color/ ).

Every embodiment in the '460 patent that mentions a handle configuration for "pushing" or "pulling" describes it as a configuration for only that action. (See, e.g., Joint Claim Construction App'x at Abstract, Doc. 45-1 at PageID 4212) ("[I]n some embodiments, the wagons have a pull-handle that can be moved between different positions"); id. at 6:12-18, PageID 4248 ("the pivot-lock mechanism locks the handle in a . . . 'down' position folded forward/down but away from the base in an extended arrangement for pulling the wagon"); id. at 7:21-23, PageID 4249 ("the upright position places the handle in an ideal position for pushing the wagon")). The patent does not describe any scenarios where the position of a wagon handle is sometimes for pulling and pushing and then, at other times, for pushing or pulling. As a result, the definition given these terms must be one or the other: the positions of the wagon handle must be exclusively for pushing or pulling or exclusively for pushing and pulling. Given that Veer Gear's actual position is again to portray the ordinary and customary meaning as something other than it is, the Court will construe "pushing" and "pulling" as "pushing only" and "pulling only."

E. Position / Positionable / Repositionable

Evenflo asks this Court to construe the words "position" as "a location configured for

14

placement" and "[re]positionable" as "selectivity moveable while the other components are stationary." Veer Gear would have the Court give these words their ordinary and customary meaning.

The term "position" is used in every independent claim of the '460 patents, and simply refers to the position of various components (e.g., sidewall, handle, and footwell). "Positionable" is used in claims 1 and 10, which require "at least one sidewall positionable in a use position and a stored position" and the "bottom surface comprises [claim 10 uses "includes" instead] a footwell feature positionable in an extended position and a storage position." (Doc. 50-2, 9:17– 18, 23–25, 62– 63, 10:1–3). "Repositionable" is used in claim 12, which requires "a handle that is repositionable between a first use position, a second use position, and a storage position" and "the handle is repositionable between the first use position and the second use position by pivoting the handle about a pivot point." (Doc. 50-2, 10:24–29). Claim 21 requires a "handle that is repositionable between a first use position and a second use position" and "the handle is movable about a pair of pivot points and repositionable between the first use position and the second use position by pivoting the handle about the pair of pivot points." (Doc. 50-2, 10:54–55, 59–62). Finally, claim 35 requires "the handle is repositionable between a first use position and a second use position by pivoting the handle about the first and second pivot points." (Doc. 50-2, 12:24–26).

The jury will understand what these words mean without specific construction. "[D]istrict courts are not required to construe every limitation present in a patent's asserted claims." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); see also *Procter & Gamble Co. v. CAO Group, Inc.*, 2014 WL 2117047, *8 (S.D. Ohio May 21, 2014)

15

("'gap,' 'mouth,' 'shape of a tooth,' and 'conform,' are familiar terms with known meanings that do not need to be construed."). Otherwise, the "ordinary and customary meaning" could never be the construction of a disputed claim term, which is not the law. The Court declines to construct the terms Position / Positionable / Repositionable and accords those terms their ordinary and customary meanings.

### F.     Wagon [assembly]

Veer Gear has proposed giving the term "wagon" its ordinary and customary meaning. Evenflo withdrew its proposed construction for this term in favor of its ordinary and customary meaning at oral argument.

### G.     Coupled to

Evenflo proposes construing "coupled to" as "pivotally affixed or attached," while Veer Gear would have the term understood either according to its ordinary and customary meaning or as "joined, linked or associated together."

In the '460 patent, every time the phrase "coupled to" is used to describe structural aspects of the invention, it consistently preceded by the word "pivotally." (Doc. 45-1, Appx. A at 1:30- 31 ("pull handle pivotally coupled to the base front,"), 4:23-26 (upright elements "that are each pivotally coupled at upper portions to the base and pivotally coupled at lower portions to the footrest."), 5:23-24 ("at least two link segments pivotally coupled together"), 5:25 ("two link segments pivotally coupled together"), 5:26-27 ("the lower link segment pivotally coupled at its bottom to the footrest").] Similarly, the '460 patent goes on to emphasize the importance of pivotal attachments throughout the specification, including pivotal mounting, pivotal coupling, and pivotal attachment. (Id. at 2:62 ("pivotally mounted"), 2:66 (same), 4:26 ("pivotal

16

couplings"), 5:3-5 ("X-braces that are each pivotally mounted at upper portions thereof to the wagon base, pivotally mounted at lower portions thereof to the footrest, and pivotally mounted at intermediate portions"), 5:7-8 ("pivotal couplings"), 5:31 (same), 6:3 ("pivotally attaches"). 6:34 ("pivotally mounted"), 8:6 ("pivotally mounts")).

The jury will readily understand the term's meaning in the context of the patents. The language of the claims themselves give substantial guidance as to the term's meaning. *Phillips*, 415 F.3d at 1314. No construction is necessary.

**H.     "Proximate" and "More proximate"**

While Veer Gear originally proposed that the Court construe "proximate" and "more proximate," at oral argument it agreed with Evenflo to have the Court apply the ordinary and customary meaning. The terms "proximate" and "more proximate" are sufficiently clear and understandable to a jury and require no construction. *Britax Child Safety, Inc. v. Nuna Int'l B.V.*, No. 17-cv-2724, 2019 WL 7161687, at *24-25 (E.D. Pa. Dec. 23, 2019) (declining to construe the terms "proximate" because "the plain and ordinary meaning of these non-technical terms is apparent").

**I.     "May Travel"**

Veer Gear would have the Court construe "may travel" as "is permitted to travel." Evenflo would have it given its plain and ordinary meaning.

The claim term "may travel" appears only in independent claim 10 of the '460 Patent. In context, that claim requires a handle that can be in a first or a second position, and "wherein, in the second position, the handle may travel through a pivotal path about a pivot point." (Doc. 50-2, 10:9–10).

17

When a patentee chooses to define the invention in optional terms, e.g., the widget may have a rough surface, the optional attribute does not narrow the claim scope. *In re Johnston*, 435 F.3d 1381, 1384 (Fed. Cir. 2006) (for a claim that specified that a "wall may be smooth, corrugated, or profiled, stating that, "[a]s a matter of linguistic precision, optional elements do not narrow the claim because they can always be omitted."); *Game and Tech. Co., Ltd. v. Wargaming Grp. Ltd.*, 942 F.3d 1343, 1351 (Fed. Cir. 2019) ("The use of the word 'may' in the definition strongly implies that the pilot does not necessarily control the motions of the unit."); *IQASR LLC v. Wendt Corp.*, 825 F. App'x 900, 906 (Fed. Cir. 2020) (nonprecedential) ("A patentee cannot simultaneously use non-modal verbs [e.g., may] to avoid limiting the scope of an invention while also arguing that those same examples define the limits of the invention."). May does not mean must. Therefore, the Court will construe this term as having its plain and ordinary meaning.

The meaning of the term "may travel" is sufficiently clear within the context of claim 10. As drafted, a jury would understand that the claim means the handle may travel through a pivotal path, or it may not. Thus, no construction is required.

**J.     Construction of Undisputed Terms**

The parties have agreed to the construction of two terms: (1) "lateral" as used in claims 21, 28, and 35 should be construed to mean "side," and (2) "base" as used in claims 12, 14, and 15 should be construed to mean "one or more components that form the bottom of the wagon's cargo container and support at least one wall." The Court is not bound by the parties' agreed-upon construction and has an independent duty to construe terms. See *Markman*, 517 U.S. at 372). Here, the parties' agreed construction of "lateral" will be entered because it is supported by

the extrinsic and intrinsic evidence. The '460 patent, at 8:5–7 explains that "the handle 18 e is U-shaped, pivotally mounts to the wagon base at the middle of its sides." Figure 44 shows this U-shaped handle. (Doc. 50-2, Fig. 44). Independent claim 21 claims a U-shaped handle, with "pair of lateral portions" and "a central porting extending between the pair of lateral portions." During prosecution, the Examiner equated the "lateral portions" with "side" portions. (Doc. 45, PageID 4559, Non-Final Office Action dated Feb. 17, 2021, at 3] ("Chiapetta discloses…a pair of lateral portions (Chiapetta discloses storage and use positions including lock feature with a central arm and adjacent sides)."). Further, contemporary dictionary definitions define "lateral" in terms of something on the "side." (Doc. 50-2). Thus, to aid the jury, the Court will construe "lateral" to mean "side." Next, the Court previously construed the term "base" to mean "one or more components that form the bottom of the wagon's cargo container and support at least one wall." (Doc. 29, PageID 4056). The parties propose that this same prior construction also apply to the term "base" as used in the '460 Patent. The Court will do so.

**DONE** and **ORDERED** in Dayton, Ohio on Monday, November 28, 2022.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE